KANSAS CITY, MISSOURI, Appellant, v. H. H. HALVORSON, ESTHER E. HALVORSON, STATE MUTUAL LIFE ASSURANCE CO., NEW ENGLAND MUTUAL LIFE INSURANCE CO., MUTUAL LIFE INSURANCE CO., JOHN HANCOCK MUTUAL LIFE INSURANCE CO.—No. 38855.—180 S. W. (2d) 710.

Court en Banc, June 5, 1944.

*William E. Kemp,* City Counselor, *Arthur R. Wolfe* and *David M. Proctor,* Assistant City Counselors, for appellant.

1028

*Ernest D. Martin* for H. H. Halvorson and Esther E. Halvorson, respondents.

*Samuel D. Newkirk* and *Henry I. Eager* for The Mutual Life Insurance Company of New York and John Hancock Mutual Life Insurance Company respondents; *Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* for State Mutual Life Assurance Company and New England Mutual Life Insurance Company respondents.

TIPTON, J.—A demurrer to appellant's first amended petition was sustained by Division One of the Circuit Court at Kansas City, Missouri. Appellant declined to plead further and the Court entered a judgment dismissing appellant's petition. From that judgment, the appellant has duly appealed.

In substance, the appellant's amended petition stated it recovered a judgment against the respondent, H. H. Halvorson, on January 25, 1943; that an execution issued on that judgment was returned *nulla bona,* and that H. H. Halvorson was insolvent at all times mentioned in the petition; that during the last twelve years prior to the filing of the petition, the respondent, State Mutual Life Insurance Company of Worcester, Mass., insured the life of H. H. Halvorson in diverse insurance contracts in the sum of $24,500 and executed and delivered these contracts or policies of insurance to H. H. Halvorson; that each of the other named respondent insurance companies during the last twelve years prior to the filing of this petition insured the life of H. H. Halvorson in the sum of $5,000 and delivered such policies to him; that these insurance policies were "old line" policies; that the respondent, Esther E. Halvorson, the wife of H. H. Halvorson, was beneficiary in all of these policies; that the premiums on all of these policies were paid out of funds or property of H. H. Halvorson; that the aggregate amount of premiums paid in each year since the delivery of such policies exceeded the sum of $1500; and that the appellant did not have knowledge as to the exact amount of premiums paid to these insurance companies in excess of $500 a year. Also, the petition stated that the action was based upon Section 5850, R. S. Mo. 1939.

The appellant prayed for a judgment: (1) determining the amount of premiums paid by H. H. Halvorson to the corporate respondents

in excess of $500 a year during the life of the policies and the extent of appellant's right in and to same; (2) establishing and impressing a lien on all of the excess premiums as security for the payment of judgment of appellant; (3) directing corporate respondents to pay appellant the amount of the excess premiums; (4) substituting the appellant for respondent H. H. Halvorson, with respect to all of his rights, interests and equities in and to these policies; (5) enforcing all the rights and equities of appellant as judgment creditor here and for such further orders, judgments and decrees as the Court might deem fit and proper.

Appellant says the "sole question [on this appeal] is the construction of Section 5850, R. S. Mo. 1939, and the sufficiency of appellant's petition based thereon."

That Section reads: "Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of the wife of the insured, shall inure to her separate benefit, independently of the creditors, executors and administrators of the husband: *Provided, however,* that in the event of the death or divorcement of the wife before the decease of the husband, he shall have the right to designate another beneficiary, upon written notice to the company, but such notice shall not be effected, unless indorsed upon the policy by the president or vice-president and secretary of the company issuing the policy. But when the premiums paid in any year out of the funds or property of the husband shall exceed the sum of five hundred dollars, such exemptions from such claims shall not apply to so much of said premiums so paid as shall be in excess of five hundred dollars, but such excess shall inure to the benefit of his creditors."

In construing this section, the Kansas City Court of Appeals in the case of Kiely v. Hickcox, 70 Mo. App. 617, l. c. 622-623, said: "When a wife of an insolvent husband insures his life, or she is the beneficiary in the policy, it *ipso facto* becomes *her* property. A creditor has no interest in it, or its proceeds, when collected. If it has been paid for by funds of the husband, such funds, in excess of the exemptions, have been wrongfully diverted and may be claimed by the creditor, but he has no right to appropriate the policy which never belonged to his debtor.

"The foregoing construction of the statute leaves no consequence to be attached to plaintiff's allegations of the design and intent on the part of the deceased to defraud his creditors. What he expended in premium to the amount of $500, whatever his intentions, could not affect creditors, since that which the law authorized him to do could not be fraudulent; and the premium in excess of $500 would be liable to plaintiff's claims without regard to his intention."

We placed the same construction on this Section in the case of Judson v. Walker, 155 Mo. 166, 55 S. W. 1083.

Therefore, under the facts alleged in appellant's amended petition, the appellant is entitled to any excess over $500 paid on premiums each year after II. H. Halvorson became insolvent.

Both appellant and respondents do not disagree with this construction, but respondents do contend that this action is premature—that the Section applies only after the death of the insured, when the policy would be payable.

This Section was first enacted in 1865, but was amended at various times until 1899. It has been in its present form since that date. It has been construed in the following cases: Charter Oak Life Ins. Co. v. Brant et al., 47 Mo. 419; Pullis v. Robison, 73 Mo. 201; Kiely v. Hickcox, supra, and Judson v. Walker, supra. But in each of these cases, the insured was dead when these cases were begun. The exact question now before us has never been decided by an appellate court of this State.

Appellant in his petition pleaded that the policies in question were "old line" policies, and in his brief said that in effect it is insurance on the stipulated premium plan and is governed by Article 4, Chapter 37, of the Revised Statutes of Missouri, 1939. To support its contention, appellant cites the case of Mattero v. The Central Life Ins. Co., 202 Mo. App. 293, 215 S. W. 750. If appellant is correct in this contention, which we do not decide, then we think the issue before us is governed by Section 5883, Article 4, supra. That Section says: "The money or other benefit . . . *to be paid*, . . . by any corporation authorized to do business under this article, shall not be liable to attachment or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, nor by operation of law, to pay any debt or liability of a policy . . . holder, or any beneficiary named in a policy . . . ." (Italics ours.)

Applying this Section to the facts stated in appellant's petition, it says that any money to be paid by the corporate respondents cannot be seized, either legally or equitably to pay H. H. Halvorson's debts while these policies are in effect; that is, before H. H. Halvorson's death.

Section 5850, supra, cannot be an exception to Section 5883, supra. In the first place, Section 5850 applied to all kinds of life insurance policies and that Section was originally enacted in the year 1865; while Section 5883 was first enacted in 1899 and applies only to insurance policies on the stipulated premium plan, where a reserve is established, so it can have a cash or surrender value. Section 5850 may apply to a policy that does not have any reserve. This shows that Section 5850 contemplates that the death of the policyholder must occur before the creditors can come within its provision.

In the second place, the purpose of Section 5850 was to allow a husband who might be insolvent to secure to the wife the benefit of insurance on his life free from the claim of creditors when the an-

1034

nual premium on the policy does not exceed $500, a right he did not have when this Section was originally enacted. Can it be said that H. H. Halvorson could have a policy of insurance in which his sister is the beneficiary and she would be protected under Section 5883, yet his wife would not have that protection because of Section 5850? We think not.

Appellant has cited us cases in which a policyholder was adjudicated as bankrupt to sustain its contention. They cannot be in point, because the Bankruptcy Act [Section 70, of the Bankruptcy Act, 11 U. S. C. A., 110, Subsection A (3)] provides that the trustee shall be vested by operation of law with the title of the bankrupt to all powers which he might have exercised for his own benefit. A judgment creditor under the laws of this State does not have the rights and power of a trustee in bankruptcy.

It follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.